Argued and submitted December 14, 1979, reversed March 10, reconsideration allowed, former opinion adhered to (46 Or App 645, 612 P2d 759) June 16, petition for review denied December 16, 1980 (290 Or 249)

AMERICAN FEDERATION OF
STATE, COUNTY, AND MUNICIPAL
EMPLOYEES, LOCALS 626 AND 2831, et al,
*Petitioners,*

*v.*

LANE COUNTY BOARD
OF COMMISSIONERS, et al,
*Respondents.*

(No. C-216-79, CA 15735)

607 P2d 1212

Henry H. Drummonds, Eugene, argued the cause for petitioners. With him on the brief were Jennifer Friesen and Kulongoski, Heid, Durham & Drummonds, Eugene.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent, Employment Relations Board. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Richard A. Wyman, Assistant County Counsel, Eugene, argued the cause and filed the brief for respondent, Lane County Board of Commissioners.

George Lehleitner, Jr., Salem, filed a brief amicus curiae for Oregon School Employees Association.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

**GILLETTE, J.**

The American Federation of State, County and Municipal Employees, Locals 626 and 2831 (the union), seeks review of an order of the Employment Relations Board (ERB) declaring a strike by the approximately 800 courthouse and road department employees represented by the union to be in violation of their collective bargaining agreement with Lane County (County) and ordering that the strike be halted.[1] We reverse.

In July, 1977, the union and the county entered into a collective bargaining agreement effective for a three year period. That contract contained what is known as a "reopener" clause which provided for negotiation over such items as wages and fringe benefits at the end of the second year. The contract also contained a no-strike clause and a grievance procedure which provided in part:

> "Should a disagreement arise concerning the interpretation or application of the provisions of this agreement, or as to the performance of the obligations herein, such disagreement *shall* be settled according to the terms hereinafter provided." (Emphasis added).

The final step of the specified grievance procedure was final and binding arbitration. Additional language made the grievance procedure applicable to the county as well as the union and the employees.

The union and the county began bargaining over economic items near the end of the second year of the contract. They participated in statutory mediation and fact-finding procedures. ORS 243.712; 243.722. The union rejected the fact-finding report and, on September 13, 1979, after a 30-day cooling-off period, sent the

---

[1] The strike against the county was halted upon the order of the ERB and the dispute upon which the strike was based has since been settled. It was suggested that this appeal is now moot because of the settlement. There are, however, ancillary consequences arising from the decision of the ERB which justify review of its decision by this court.

county the statutorily-required notice of intention to strike.[2] *See* ORS 243.726. On September 20, 1979, the county filed a combined complaint/petition with the ERB alleging that the then proposed strike was illegal under the provisions of ORS 243.726(2)(b)[3] and that it was a violation of the no-strike clause of the collective bargaining agreement. The strike began on September 25, 1979.

The hearing before the ERB took place on October 2, 1979. An order was issued on October 11, 1979, in which the ERB determined that the strike was not in violation of ORS 243.726 but that it was in violation of the contract between the union and the county.

The union challenges the order of the ERB on several grounds. We reach only one. We agree with the union that the ERB was without authority to ignore the mandatory grievance procedures provided in the collective bargaining agreement and to proceed to interpret the contract without requiring that the parties bring the matter to arbitration.

In *West Linn Education Association v. West Linn School District No. 3JT,* 3 PECBR 1864 (1978), the

---

[2] The subject of the collective bargaining—wages and fringe benefits— was not a matter which was itself subject to arbitration.

[3] ORS 243.726(2) provides:

"(2)  It shall be lawful for a public employe who is not prohibited from striking under subsection (1) of this section and who is in the appropriate bargaining unit involved in a labor dispute to participate in a strike after:

"(a)  The requirements of ORS 243.712 and 243.722 relating to the resolution of labor disputes have been complied with in good faith;

"(b)  The proceedings for the prevention of any prohibited practice have been exhausted;

"(c)  Thirty days have elapsed since the board has made public the factfinder's findings of fact and recommendations; and

"(d)  The exclusive representative has given 10 days' notice by certified mail of its intent to strike and stating the reasons for its intent to strike to the board and the public employer."

The parties do not contend that any other subsection of ORS 243.726 is applicable.

ERB adopted, as a policy decision, an exhaustion of remedies doctrine, requiring that parties to a collective bargaining agreement exhaust their contract remedies before bringing an unfair labor practice charge. In the present case, the ERB announced an exception to that exhaustion doctrine in which it stated:

> "As a matter of law, this Board must hear an employer's petition to declare the strike unlawful under ORS 243.726. As a matter of policy, where an unfair labor practice is filed charging breach of a contract no-strike provision and violation of ORS 243.672(2)(d), this Board will exercise its jurisdiction rather than applying the exhaustion of contract remedies doctrine. The public interest involved, where public services are or will be disrupted by a strike, requires the most expeditious and definitive response possible. By using expedited procedures whereby this Board rather than a board agent hears cases involving a strike, this Board rather than an arbitrator, can provide the most expeditious determination. Furthermore, if the exhaustion of contract remedies doctrine were applied, this Board would be required to bifurcate a complaintant's causes of action where, like [sic] in the instant case, both a violation of ORS 243.672(2)(d) and ORS 243.726 are alleged, since only this Board has the authority to make a determination as to whether a strike is illegal under ORS 243.726."

Having made the policy decision in *West Linn,* the ERB argues that it may make exceptions to that policy. However, the decision to ignore the kind of arbitration provision of a collective bargaining agreement involved here has not been left to the discretion of the ERB.

In *West Linn, supra,* the contract in question did not *require* that all grievances be settled through the procedures established by the contract, nor did it provide for binding arbitration. In that situation, the application of an exhaustion doctrine may have been within the discretion of the ERB. *But see Fish and Wildlife Department v. LCDC,* 288 Or 203, 603 P2d 1391 (1979).

In the present case, however, the union's right to insist that the grievance procedures established in the contract be followed does not depend on the application of a policy established by the ERB but rather on the contract itself and on the provisions of the Public Employees Collective Bargaining Act, ORS 243.650 *et seq.* The union and the county agreed that disputes regarding the "interpretation or application" of the contract *shall* be settled through a particular set of procedures culminating in final and binding arbitration. Their right to so agree is specifically recognized by statute, ORS 243.706.[4] The question of whether the strike by the union over wages and fringe benefits which were not arbitrable violated the no-strike clause of the contract is a dispute regarding the interpretation of the contract.

The ERB may not justify a decision to ignore the express provisions of the contract by concern for the public interest. The legislature established procedures in ORS 243.726 (3)[5] for relief (including injunctive

---

[4] ORS 243.706 provides:

"(1)  A public employer may enter into a written agreement with the exclusive representative of an appropriate bargaining unit setting forth a grievance procedure culminating in binding arbitration.

"(2)  In addition to subsection (1) of this section, a public employer may enter into a written agreement with the exclusive representative of its employes providing that a labor dispute over conditions and terms of a contract may be resolved through binding arbitration."

[5] ORS 243.726(3) provides:

"(3)  (a) Where the strike occurring or is about to occur creates a clear and present danger or threat to the health, safety or welfare of the public, the public employer concerned may petition the circuit court of the county in which the strike has taken place or is to take place for equitable relief including but not limited to appropriate injunctive relief.

"(b)  If the strike is a strike of state employes the petition shall be filed in the Circuit Court of Marion County.

"(c)  If, after hearing, the court finds that the strike creates a clear and present danger or threat to the health, safety or welfare of the public, it shall grant appropriate relief. Such relief shall include an order that the labor dispute be submitted to final and binding arbitra-

relief) when a strike threatens the public health, safety or welfare. Otherwise, public employes are expressly guaranteed the right to strike if the statutory prerequisites are met. ORS 243.726.[6]

It is true that a strike in breach of a collective bargaining agreement is an unfair labor practice under ORS 243.672(2)(d). However, the parties here have agreed that the issue of whether or not the strike is, in fact, in breach of the contract will be submitted to arbitration. The ERB may not ignore that agreement.

We hold that, once the ERB had determined that the strike was not in violation of ORS 243.726, it had no authority to ignore the mandatory grievance procedures of the collective bargaining agreement between the union and the county. It follows that its order declaring the strike to be an unfair labor practice was "[o]utside the range of discretion delegated to the agency by law." ORS 183.482(8)(b)(A).

Reversed.

---

tion within 10 days of the court's order. The manner of selection of a board of arbitration shall be as set forth in ORS 240.060, 240.065, 240.080, 240.123, 243.650 to 243.782, 292.055, 341.290, 662.705, 662.715 and 662.785."

[6] This is not a situation in which we must decide whether the legislature has left a policy determination to the expertise of the agency or to the court. *See McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979). The policy determinations have been made by the legislature and the ERB may not redecide those issues.