Argued and submitted September 5, 1989, the decision of the Court of Appeals affirmed and the order of the commission affirmed November 8, 1990, reconsideration denied January 15, 1991

7455 INCORPORATED,
dba Jiggles,
*Petitioner on Review,*

*v.*

OREGON LIQUOR CONTROL COMMISSION,
*Respondent on Review.*

Jane COPPEDGE
dba J.J.'s,
*Petitioner on Review,*

*v.*

OREGON LIQUOR CONTROL COMMISSION,
*Respondent on Review.*

(OLCC Nos. 85-L-013, 85-V-016, 85-L-014, 85-V-017;
CA A43092; SC S36106)

800 P2d 781

John Henry Hingson III, Oregon City, filed the petition and argued the cause for petitioners on review.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, Chief Justice, and Linde,** Carson, Jones,*** Gillette and Fadeley, Justices, and Campbell,**** Justice pro tempore.

CARSON, J.

** Linde, J., retired January 31, 1990.

*** Jones, J., resigned April 30, 1990.

**** Campbell, J., died January 11, 1990.

## CARSON, J.

The Oregon Liquor Control Commission (OLCC or the Commission) refused to renew and cancelled petitioners' two retail malt beverage (RMB) licenses for establishments known as Jiggles and J.J.'s, respectively. Petitioners sought judicial review of the OLCC order in the Court of Appeals, which affirmed without opinion by an equally divided court. *7455 Incorporated v. OLCC,* 94 Or App 780, 767 P2d 116 (1989).

Petitioners assert that OLCC's action amounts to a statutorily impermissible "penalty or forfeiture" related to the compelled testimony of Jane Coppedge, the lone individual disclosed by the applications as having an ownership interest in the two establishments. *See* ORS 471.770.[1] We conclude that a person must assert her right not to testify without a grant of immunity and then be ordered to testify before she is entitled to statutory immunity.[2] We affirm the decision of the Court of Appeals and the order of the Commission.

### FACTS

7455 Incorporated held an RMB license for Jiggles in Tualatin beginning in January 1984. It applied for renewal for the license year beginning April 1, 1985. Jane Coppedge was president and sole stockholder of 7455 Incorporated. Coppedge (in her individual capacity) held an RMB license for

---

[1] ORS 471.770 provides:

"No person shall be excused from testifying or from producing any books, papers or documents in any investigation or inquiry by or upon any hearing before the commission or any commissioner when ordered so to do by the commission or any of its authorized agents, upon the ground that the testimony, evidence, books, papers or documents required of the person may tend to incriminate the person or subject the person to penalty or forfeiture. No person shall be prosecuted, punished or subjected to any penalty or forfeiture for or on account of any act, transaction, matter or thing concerning which the person shall, under oath, have, by order of the commission, or a commissioner, or any of its authorized agents, testified to or produced documentary evidence of; but no person so testifying shall be exempt from prosecution or punishment for any perjury committed by the person in testimony."

[2] Because petitioner Coppedge did not timely assert her right not to testify and was not subsequently ordered to testify, no right to immunity attached. Accordingly, we do not reach the issue whether the sanctions imposed would have been impermissible (as a "penalty or forfeiture" under ORS 471.770) had the right to immunity attached.

J.J.'s in McMinnville since December 1984. She applied for renewal for the same new license year.

After a period of preliminary investigations and conferences, an OLCC Hearings Examiner held seven days of hearings that revolved around the contentions of the Commission's staff that individuals other than Coppedge, notably James Schmitz, held ownership or managerial interests in Jiggles, and that Coppedge intentionally had failed to disclose those interests on the RMB applications she had signed. After review of the proceedings, the Commission, on February 5, 1987, issued its Final Findings of Fact, Conclusions of Law, and Order (Order). The order concludes that Schmitz possessed an undisclosed ownership and managerial interest in Jiggles; that Schmitz intentionally had made material false statements to OLCC; that Coppedge intentionally had made material false and misleading statements to an OLCC investigator and on the RMB applications; and that Coppedge's dishonesty in dealing with OLCC established that Coppedge was not of good moral character.[3] Based on those conclusions, OLCC refused to renew and cancelled 7455 Incorporated's RMB license for Jiggles and Coppedge's RMB license for J.J.'s.[4]

Before the hearing, Coppedge appeared for deposition pursuant to subpoena and testified. OLCC subsequently called Coppedge to testify at the hearing, pursuant to an agreement that she need not be subpoenaed to appear. Coppedge testified at the hearing.

In her deposition and hearing testimony, Coppedge testified concerning her role in preparing and signing the applications; her exclusive financial interest in Jiggles; the role of Schmitz at Jiggles; and the circumstances surrounding a $40,000 unsecured loan, as she had described them to an OLCC investigator.

Coppedge did not invoke her state or federal constitutional right against self-incrimination during her testimony at

---

[3] OLCC's conclusions regarding Coppedge's material false statements relate to statements she made on OLCC applications, OLCC questionnaires, and in statements to an OLCC investigator, but not to testimonial statements at deposition or hearing.

[4] The OLCC Order relied on ORS 471.295(4), 471.315(1), 471.757(2); OAR 845-05-015(3), 845-06-010(4), and 845-06-200.

either the deposition or the hearing. *See* Or Const, Art I, § 12; US Const, Amend V.[5] The issue of statutory immunity based on ORS 471.770 was raised, by motion for dismissal of the proceedings, for the first time after Coppedge finished testifying at the hearing. OLCC denied the motion to dismiss.

## THE RIGHT TO STATUTORY IMMUNITY

ORS 471.770 grants transactional immunity for compelled testimony in an OLCC proceeding. *See State v. Soriano*, 68 Or App 642, 659 n 17, 684 P2d 1220, *adopted and affirmed per curiam*, 298 Or 392, 693 P2d 26 (1984) (under Oregon Constitution, only transactional immunity is permissible and statutory immunity of use and derivative use fails to meet constitutional requirements). Transactional immunity, at least as to criminal consequences, means that "the witness is immune from prosecution for any offense to which the immunized testimony relates." *Id.* at 644 n 3. Transactional immunity, at least as to criminal consequences, is required when a witness is compelled to testify notwithstanding the constitutional right against self-incrimination contained in Article I, section 12, of the Oregon Constitution. *Id.* at 662-65.[6]

Although a number of statutes grant testimonial immunity, this court rarely has ventured into the arena and never has reviewed the statutes in an administrative rather than a criminal context. *See State v. Soriano, supra,* 68 Or App at 659-60. The contextual distinction is crucial in analyzing whether ORS 471.770 requires a witness to assert the right to

---

[5] Article I, section 12, of the Oregon Constitution provides:

"No person shall be put in jeopardy twice for the same offence [*sic*], nor be compelled in any criminal prosecution to testify against himself."

The Fifth Amendment of the Constitution of the United States provides:

"No person shall be * * * compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law * * *."

[6] There is no constitutional right under Article I, section 12, to refuse to testify in an administrative proceeding on the grounds that the testimony may lead to noncriminal consequences. *See generally State v. Langan*, 301 Or 1, 5, 718 P2d 719 (1986) (the constitutional right against self-incrimination adheres in any proceeding, judicial or nonjudicial, where "the state seeks to compel testimony that may be used against the witness in a criminal prosecution."); *State v. Soriano*, 68 Or App 642, 647, 684 P2d 1220 *adopted and affirmed per curiam*, 298 Or 392, 693 P2d 26 (1984) (exceptions to the common law privilege upon which the constitutional right against self-incrimination is based all arose "in situations where it was clear that any criminal liability which might attach to the witness' answers had expired.").

an immunity before she is entitled to the corresponding statutory immunity.

This court has held that a witness is entitled to immunity from criminal prosecution if the prosecution subpoenas the witness to testify before the grand jury or at trial concerning criminal gambling offenses; the witness need not first invoke the constitutional right against self-incrimination and be ordered to testify before being entitled to the immunity provided by the statute. *State v. Hennessey,* 195 Or 355, 245 P2d 875 (1952). The Oregon Court of Appeals has applied the holding of *Hennessey* to ORS 471.770 and immunized an OLCC-certified operator from criminal prosecution relating to falsification of records. The immunity was based on the operator's contemporaneous testimony at deposition, pursuant to subpoena, in an administrative proceeding to cancel the operator's certification for falsifying records. *State v. Strance,* 95 Or App 488, 769 P2d 793 (1989).

*Hennessey* remains good law within its context and it is useful to analyze what it brings to the problem at hand. The *Hennessey* court applied OCLA § 23-932, which "provides immunity only in cases involving gambling transactions, and is *in no sense general.*" 195 Or at 365. (Emphasis added.)[7] The statute traced to Oregon's earliest grant of immunity, *see State v. Soriano, supra,* 68 Or App at 658-59, and applied by its terms only to criminal consequences ("no indictment or prosecution shall afterwards be brought") for testimony compelled by the prosecution in a criminal proceeding. *State v. Hennessey, supra,* 195 Or at 372.

In *Hennessey,* this court recognized that a prosecutor's subpoena to testify before a grand jury concerning criminal gambling offenses is sufficient to trigger the statutory immunity for compelled testimony, without the necessity of the witness asserting the right before actually testifying. 195 Or at 366-67. The acts under investigation were

---

[7] OCLA § 23-932, later repealed, provided:

"No person otherwise competent as a witness under the laws of this state shall be disqualified from testifying as such concerning the offenses mentioned in this act on the ground that his testimony may criminate himself. Such testimony shall be reduced to writing, and no indictment or prosecution shall afterwards be brought against him for the particular offense concerning which he testified as a witness."

criminal by definition; the witness' testimony sought in a gambling case most likely would implicate the witness in the offense under investigation; the penalty for refusal to testify was contempt; and the decision to subpoena the witness was made by the prosecutor, who is charged with general enforcement of the criminal laws. *State v. Hennessey, supra,* 195 Or at 367-71; *State v. Soriano, supra,* 68 Or App at 648.

Consider by contrast the administrative arena within which ORS 471.770 operates. The acts under investigation in an administrative proceeding may or may not be criminal, in addition to being regulatory. *See* ORS 471.990 (making criminal certain violations of alcoholic liquor statutes). A witness in an administrative hearing well may be someone who already has voluntarily established a relationship with the agency, a relationship that includes obligations to provide truthful statements, applications, and supporting documentation.[8] The Commission has authority under the statute to immunize testimony (by "ordering" it) from criminal consequences, but the Commission does not possess the corresponding authority to enforce the criminal laws. *See* ORS 471.730(4).

The administrative agency investigating a licensing matter, for example, is thus in a materially different position than the prosecutor in a gambling case, at the point when a subpoena issues.[9] The criminal law-based rationales for the holding in *Hennessey,* that the gambling immunity statute is self-executing once a subpoena issues, either do not apply or are contra-indicated in the context of ORS 471.770 as applied to a licensing proceeding.[10]

There is also a structural difference between the statute applied in *Hennessey* and ORS 471.770. Unlike the statute in *Hennessey,* ORS 471.770 expressly requires that, to be immunized, the testimony must be given pursuant to an

---

[8] *See, e.g.,* ORS 471.757 (OLCC may require licensees to submit sworn statements disclosing financial interests in the licensee's business).

[9] Each of the statutes upon which OLCC relied for its order *(see* n 4, *supra)* states grounds for the Commission to refuse, cancel, suspend, or refuse to renew a license.

[10] As *Hennessey* expressly recognized, the gambling immunity statute was in no sense general and under different statutes courts have held that a person must claim a right not to testify without immunity and then be ordered to testify in order to be entitled to immunity. *State v. Hennessey,* 195 Or 355, 365-66, 245 P2d 875 (1952).

"order" of the Commission. ORS 471.760 separately authorizes Commission orders to appear as a witness and Commission orders to compel testimony, suggesting an opportunity for Commission deliberation after a witness appears, perhaps occasioned by a witness' invocation of the right to immunity.

■     There is little or no justification for a rule of automatic immunity in the context of ORS 471.770 as applied to a licensing proceeding and the statute, by its terms, requires no such rule. In the absence of a statutory grant of immunity for self-incriminatory testimony, a witness ordinarily is required to assert the witness' constitutional right to be free from compelled self-incrimination before further compelled testimony will be immunized. Such a rule places no special burden on a witness in the administrative licensing context and it frees the administrative process to hear such testimony as may be offered until a claim of right is made. At that point, the Commission can evaluate its need for the specific testimony it seeks and this may be done in consultation with the district attorney when appropriate. *See* ORS 471.730(4) (Commission obligation to investigate and aid in prosecution of violations of alcoholic liquor statutes).

■ ■     We hold, therefore, that before a witness becomes entitled to an immunity under ORS 471.770, the witness must invoke the right not to testify under oath without that immunity. The Commission must then decide whether to immunize the testimony by order or to proceed without it. ORS 471.770 does not provide for an automatic right to the immunities listed in the statute based on the issuance of a Commission subpoena. Only a post-invocation "order" to testify is an "order" sufficient to trigger an immunity under ORS 471.770.

In this case, Coppedge first asserted her right to statutory immunity after the completion of her deposition and hearing testimony and, accordingly, waived her right to claim any immunity as a result of her testimony.

The decision of the Court of Appeals is affirmed. The order of the Commission is affirmed.