Argued and submitted April 1, reversed and remanded July 22, reconsideration denied November 4, petition for review denied November 24, 1992 (314 Or 727)

## STATE OF OREGON,
*Appellant,*

*v.*

## JOHN GRAF,
*Respondent.*

(90-06-33472, 90-06-33473, 90-06-33474; CA A69280)

835 P2d 934

Rives Kistler, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Marc D. Blackman, Portland, argued the cause for respondent. With him on the brief was Ransom, Blackman & Weil, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

The state appeals the trial court's pretrial dismissal of 2 of 3 indictments charging defendant with 5 counts of theft. We agree that the trial court erred and reverse and remand for further proceedings.

Defendant is an employee of the Department of Transportation (DOT). In April, 1990, he was interviewed by State Police detectives who were investigating possible wrongdoing at DOT. They told him that they had enough information to indict him for theft. In June, 1990, the Union County Grand Jury issued three indictments charging defendant with theft. In September, 1990, DOT notified him that "potential cause" existed for his dismissal from state service. The notice said that defendant was dismissed with pay, pending predismissal proceedings. It provided "supporting facts" for the dismissal and concluded:

"SUMMARY

"Your conduct shows misappropriation of state property, misuse of state property, misuse of the labor of three state employees working on state time, disregard of the rights and property of your employer, abuse of your authority as a shop superintendent, and violation of the trust placed in you by the Division. Your actions constitute misconduct and malfeasance, and show unfitness for employment by the Division.

"APPEAL

"You may be dismissed from state service on the basis of the foregoing charges. You may refute the charges or present mitigating information * * * on Thursday, October 4, 1990 * * *."

OAR 105-80-003 provides that a DOT employee who is subject to dismissal for alleged misconduct is entitled to a pretermination hearing and also a post-termination hearing on "appeal" to the Employment Relations Board. OAR 105-80-003(3)(d) provides that

"[t]he failure of the employee to offer any testimony or to appear at the scheduled suspension without pay or pretermination meeting is the employee's waiver of the right to refute or present matters of mitigation but does not constitute any admission or denial of the charges."

The October 4 hearing referred to in the notice of September, 1990, was the pretermination hearing.

Defendant's attorney wrote to DOT on September 28, stating his belief that DOT had placed on defendant the burden to refute the charges or face dismissal and that DOT's power to terminate defendant unless he responded on October 4

"constitutes 'compulsion' in a constitutional sense under Article I, § 12 of the Oregon Constitution * * * and hence [defendant's] participation in the hearing * * * during which he will refute the charges and otherwise submit to questioning will *de facto* confer transactional immunity on him * * * and hence will be the basis for a motion to dismiss any pending or potential future criminal charges that may be brought against [defendant] arising out of the same facts or circumstances."

DOT responded by letter that the purpose of the pretermination hearing was to satisfy the requirements of due process and to provide the employee with "the voluntary opportunity to present whatever information he wishes the employer to consider prior to the employer['s] making the employment decision." The letter stated that defendant was not required to present any information before DOT made its decision, that DOT was not ordering or directing him to present any evidence and that, if he did testify, he would not be required to submit to cross-examination.

Defendant attended the hearing and testified and then filed a motion to dismiss the criminal charges pending against him on the ground that his testimony at the pretermination hearing was compelled within the meaning of Article I, section 12, and the Fifth Amendment; therefore, the Oregon Constitution conferred transactional immunity on him. The trial court agreed and granted the motion in part, stating:

"The Court is persuaded that under the circumstances as presented to the Court, the Defendant was compelled to testify before the administrative personnel action hearing.

"Under *State v. Soriano*, 68 Or App 642, 684 P2d 1220, *opinion adopted* 298 Or 392, 693 P2d 26 (1984), transactional immunity is available to the Defendant, subject to

Defendant having testified to, or presented incriminating material at that hearing."

The court ruled that defendant's testimony had incriminated him with respect to 2 of the 5 charges, and it dismissed them.

■ The initial question is whether defendant was compelled, within the meaning of Article I, section 12, of the Oregon Constitution or the Fifth Amendment to the United States Constitution to appear and testify at the pretermination hearing. The trial court agreed with defendant that the rationale of *Garrity v. New Jersey*, 385 US 493, 87 S Ct 616, 17 L Ed 2d 562 (1967), requires the conclusion that defendant was compelled to testify, because he had no realistic choice. In *Garrity*, the police officer appellants had no choice because a New Jersey statute *required* them to testify and provided that, if they refused, they would automatically forfeit their office and any vested or future pension and were not eligible thereafter for election or appointment to any public office or employment with the state. Defendant was not specifically required by OAR 105-80-003(6)(d) to appear and to testify at the pretermination hearing. Rather, the function of that hearing was to satisfy defendant's due process right to respond to the charges against him before the decision to terminate him could become final. *Tupper v. Fairview Hospital*, 276 Or 657, 556 P2d 1340 (1977); *Arnett v. Kennedy*, 416 US 134, 94 S Ct 1633, 40 L Ed 2d 15 (1974). He was not required to appear or to give evidence, and his failure to do either would not constitute an admission of the charges. DOT's decision would be based on the evidence that it had obtained from other sources.

However, defendant also had a right to a post-termination hearing, ORS 240.560; OAR 105-80-003(8), which is a more formal proceeding in which he would have the right to subpoena witnesses and to cross-examine witnesses. He argues that, if he had refused to testify at the pretermination hearing, OAR 105-80-003(6)(d) precluded him from refuting or offering evidence in mitigation at the later hearing. The state does not dispute that reading of the rule. The pretermination hearing is not designed as a full fledged due process hearing. It is characterized as a "meeting," and subsection (E) of the rule provides that it "shall not be a formal hearing procedure and shall not include rights of

direct examination and cross-examination of witnesses." The full due process hearing is provided by an "appeal" to the Employment Relations Board. ORS 240.560 and subsection (8) of the rule. In *Fairview Hospital v. Stanton,* 28 Or App 643, 648, 560 P2d 667 (1977), we held:

> "Public employment coupled with civil service or tenure job protection, i.e., legal provision that an employe will only be discharged for cause, is an entitlement that can only be taken by way of procedures that satisfy due process standards. *Tupper v. Fairview Hospital,* 276 Or 657, 556 P2d 1340 (1976). Due process is satisfied by minimum pretermination procedures, *Tupper,* 276 Or at 665, followed by what the Supreme Court referred to as a 'full post-termination hearing,' 276 Or at 665, and as 'a full evidentiary hearing,' 276 Or at 663. This language strongly suggests ERB's role, constitutionally, must be that of the primary factfinder; as applied in this case, the tribunal to determine factually whether the respondent did or did not strike the Fairview resident as alleged by his supervisors."

Because failure to appear and testify at the pretermination hearing would have resulted in defendant's being denied his right to a full due process post-termination hearing at which he could refute the charges and offer matters in mitigation, we conclude that he was compelled to testify within the meaning of the Fifth Amendment. *Garrity v. New Jersey, supra.* He was forced to relinquish his constitutional right to remain silent in order to gain his right to a full due process hearing. Therefore, he is entitled to use and derivative use immunity under the federal constitution.

By the same reasoning, he was compelled to testify within the meaning of Article I, section 12. Relying on *State v. Soriano,* 68 Or App 642, 684 P2d 1220, *opinion adopted* 298 Or 392, 693 P2d 26 (1984), he contends that, under the Oregon Constitution, he is entitled to transactional immunity. In *Soriano,* we said:

> "[A] grant of testimonial immunity is a conscious *prosecutorial choice*, taken after careful consideration and with full knowledge of the results. It is not a violation of the witness' constitutional right but a determination to substitute for that right another one *granted by the legislature* and found by the courts to be an adequate replacement. The constitutional right given up is not to be compelled to testify

against oneself. *A witness granted immunity and then required to testify* has not received full value for that lost right if there is any way the testimony can cause harm to the witness in that prosecution." 68 Or App at 663. (Emphasis supplied.)

A statute that permits the court to compel testimony but grants only use or derivative use immunity in exchange is unconstitutional; only transactional immunity is an adequate substitute for the witness' right under Article I, section 12, not to be compelled to testify against himself. We held, accordingly, that the witness could not be held in contempt for refusing to testify after being granted use and derivative use immunity only.

■ In *State v. White*, 96 Or App 713, 773 P2d 824, *rev den* 308 Or 382 (1989), we explained the significance of *Soriano*. There, the defendant had been convicted of aggravated murder. While his appeal was pending, the prosecutor called him to testify in the trial of an accomplice. When he refused, the court ordered him to testify, pursuant to statute, in exchange for use and derivative use immunity. He acquiesced and testified. The Supreme Court later reversed his aggravated murder conviction and remanded the case for a new trial. *State v. White*, 303 Or 333, 736 P2d 552 (1987). In the meantime, we had decided *State v. Soriano, supra*. When the state attempted to retry him, he argued that, under *Soriano*, transactional immunity attached when he acquiesced in the trial court's order to testify in his accomplice's trial. On appeal, we rejected that argument:

"In *Soriano*, the defendants refused to comply with the court's order to testify in exchange for use and derivative use immunity under the then existing version of ORS 136.619. They were convicted of contempt. The Supreme Court reversed the convictions. *It did not hold that immunity granted by the statute was transformed into transactional immunity.*

"The authority to immunize a witness derives solely from statute. The decision to create immunity, and the nature of that immunity, is a legislative matter. If defendant was dissatisfied with the grant of immunity at [his co-conspirator's] second trial, he could again have refused to testify. He accepted that immunity by testifying, and we may not now transform the immunity that he accepted into

something he would have preferred." 96 Or App at 716. (Emphasis supplied.)

■    We adhere to our reasoning in *White*. Defendant's constitutional right is the right not to be compelled to testify against himself, not a right to immunity. Immunity is not, as defendant contends, an automatic consequence of having been compelled to testify; in Oregon, at least, it must be conferred by statute. Although *Soriano* holds that a statute that confers only use and derivative use immunity in exchange for the compelling of testimony violates Article I, section 12, we did not rewrite the statute to confer transactional immunity on the witness. Rather, we held that the witness could not be convicted of contempt for refusing to testify.

Here, there is no statute authorizing DOT to grant immunity to defendant. His decision to testify, even under compulsion, does not automatically confer transactional immunity on him.[1] Only the legislature can do that. If defendant had chosen not to testify, he could have tested the constitutionality of any adverse consequences, as did Soriano.[2] However, having testified under compulsion without a grant of immunity, he is left with the usual remedy against unconstitutionally compelling testimony:[3] suppression of his testimony before DOT, and any evidence derived therefrom, in the criminal proceeding. *See Garrity v. New Jersey, supra*. Accordingly, defendant was not entitled to have the 2 indictments dismissed, and the trial court erred in dismissing them.

Reversed and remanded.

---

[1] *7455 Incorporated v. OLCC*, 310 Or 477, 800 P2d 781 (1990), and *State v. Strance*, 95 Or App 488, 769 P2d 793 (1989), are distinguishable. In each case, a statute conferred transactional immunity, and the only questions concerned whether, under the statute, the prerequisites for immunity had been satisfied.

[2] If defendant had declined to appear at the pretermination hearing and, as a result, had been denied his right to the full post-termination hearing, he could have challenged that denial of his due process right. *See Fairview Hospital v. Stanton, supra*.

[3] Analytically, the situation is no different from one in which a person in custody is beaten until he answers questions asked by the police. He would have given compelled statements that would have been subject to suppression, but he would not be entitled to immunity from prosecution.