Argued and submitted September 3, 1993, reversed and remanded February 9, 1994

# STATE OF OREGON,
*Appellant,*

*v.*

# DANIEL ALLEN BEUGLI,
*Respondent.*

(91D-103499; CA A75452)

868 P2d 766

Rives Kistler, Assistant Attorney General, argued the cause for appellant. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Janet Lee Hoffman argued the cause for respondent. With her on the brief were Jana Toran and Hoffman & Matasar.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

The state appeals an order dismissing an information that charged defendant with six counts of sexual abuse in the second degree, ORS 163.425, four counts of official misconduct in the first degree, ORS 162.415, and four counts of harassment, ORS 166.065. It argues that the trial court erred when it concluded that defendant was entitled to transactional immunity,[1] because he was compelled to respond to questions during an internal investigation. We reverse and remand.

Defendant is an Oregon State Police (OSP) Senior Trooper. In September, 1989, OSP internally investigated a complaint that defendant inappropriately touched a woman while searching her.[2] OSP provided defendant with notice of the complaint, and he signed an "Advice of Employee Rights"[3] form before answering questions and providing a written statement about the complaint. The Advice of Employee Rights form advised defendant that he was required to answer the questions. After an internal investigation, OSP concluded that the complaint was without merit.

---

[1] Transactional immunity is immunity from prosecution for any offense to which the immunized testimony relates. *State v. Soriano*, 68 Or App 642, 644 n 3, 684 P2d 1220, *aff'd* 298 Or 392, 693 P2d 26 (1984).

[2] Although the state designated the entire record in its notice of appeal, including the audio record of the hearing on defendant's motion to dismiss, we have not received the audio record or an official transcript. We state the facts as found in the trial court's letter opinion and the parties' briefs, including the unofficial transcript contained in Appendix B of defendant's brief. The state has not objected to that unofficial transcript.

[3] The form provides, in part:

"1. You are a suspect in a disciplinary investigation.

"2. You will be informed of the nature of this investigation and the allegations prior to an interview.

"3. You have the right to have an [Oregon State Police Officers Association] representative present during the interview.

"4. You have the right to consult with a[n] Association representative prior to the interview.

"5. However, the interview shall not be delayed by more than two (2) hours if you choose to exercise your rights under number 3 or 4 above.

"6. You are required to answer questions involving non-criminal matters under investigation.

"7. Do you understand the rights that I have explained to you?"

In February, 1990, the Risk Management Division of the Department of General Services notified the OSP Superintendent's Office of Professional Standards (Superintendent) that a different woman had filed a notice of tort claim arising out of defendant's contact with her. The Superintendent began an internal investigation of the allegations in the tort claim. Defendant was notified that the claimant alleged that he had inappropriately touched her during a search. He signed another Advice of Employee Rights form and complied with an order to submit a report regarding his contact with the woman.

As a part of the internal investigation of the tort claim, an investigator located and questioned two additional women who claimed that defendant had improperly touched them. On March 28, 1990, defendant complied with orders to respond to questions about his contacts with the two additional women and to submit written reports about his contacts with them.

At about the same time, OSP began a criminal investigation into the various allegations against defendant. The Superintendent provided the criminal investigator with a copy of the tort claim and allowed him to review defendant's personnel file. The criminal investigator was later given the names, addresses and phone numbers of the two additional women who claimed that defendant had improperly searched them. The Superintendent did not give the criminal investigator any of the statements or reports that defendant had submitted in connection with the internal investigation.

During the internal investigation, defendant signed two more Advice of Employee Rights forms on March 12, 1990, and March 28, 1990. Each time he signed the advice forms, he also signed a "Disciplinary Warning — Criminal Conduct"[4] form. On March 12, 1990, as a part of the internal

---

[4] The form provides, in part:

"I wish to advise you that you are being questioned as part of an official investigation of the police department. You will be asked questions specifically directed and related to performance of your official duties or fitness for office. You are entitled to all the rights and privileges guaranteed by the laws and constitution of this state and the Constitution of the United States, including the right not to be compelled to incriminate yourself.

"I wish further to advise you that if you refuse to testify or to answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal

investigation, he complied with another order to make an oral statement regarding the various allegations against him.

On July 5, 1991, the Marion County District Attorney filed an information charging defendant with six counts of sexual abuse in the second degree, four counts of official misconduct in the first degree, and four counts of harassment arising out of defendant's contacts with the four women. Defendant moved to dismiss the information. He asserted that, because he was compelled to incriminate himself as part of the internal investigation in violation of Article I, section 12, of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, he was entitled to transactional immunity. The trial court granted defendant's motion. It held that he was entitled to transactional immunity, because OSP had unconstitutionally compelled him to testify when it ordered him to make oral statements and to submit written reports during the internal investigation.

The right to transactional immunity arises only when the legislature has granted it as a substitute for the right against self-incrimination guaranteed by Article I, section 12, of the Oregon Constitution. *State v. Soriano, supra* n 1, 68 Or App at 662. In the absence of a legislative decision to grant immunity, the remedy for unconstitutionally compelled testimony is suppression of that testimony and any evidence derived from it. *State v. Graf,* 114 Or App 275, 282, 835 P2d 934 (1992), *aff'd on other grounds* 316 Or 544, 853 P2d 277 (1993).

The state concedes that it violated defendant's right against self-incrimination when it ordered him to respond during the internal investigation.[5] However, the state argues that the legislature did not grant defendant transactional

from the police department. If you do answer, neither your statements or reports or any information or evidence which is gained by reason of such statements or reports can be used against you in any subsequent criminal proceedings. However, these statements or reports may be used against you in relation to subsequent departmental charges.''

[5] We express no opinion on the correctness of the state's apparent concession that defendant was unconstitutionally compelled to testify when he made oral statements and submitted written reports during the internal investigation. *See State v. Graf,* 316 Or 544, 551, 853 P2d 277 (1993).

immunity as a substitute for his right against self-incrimination and that OSP neither expressly nor impliedly promised that defendant would receive transactional immunity.

■ Defendant argues that the legislature has authorized a grant of transactional immunity here, because the collective bargaining agreement, under which defendant was compelled to cooperate in the internal investigation, results from the statutes authorizing collective bargaining between the state and its employees. The public employee collective bargaining statutes, ORS 243.650 to ORS 243.782, require good faith bargaining between the public employer and the authorized employee representative. A negotiated collective bargaining agreement is one that is fully consensual between the parties. However, its specific terms are not mandated by the collective bargaining statutes. There is no express determination by the legislature in the collective bargaining statutes to substitute or replace an employee's right against self-incrimination with any form of immunity.

Finally, defendant asserts that, even if the collective bargaining statutes are not the source of his right to transactional immunity, the state nevertheless expressly made such a promise in the collective bargaining agreement. He argues that the state promised him transactional immunity through the following language in the section of the collective bargaining agreement describing employees' rights in the disciplinary process:

> "If you are ordered to answer questions by your supervisor or in the internal investigation process, you are granted certain protections against use of your statements in a subsequent criminal proceeding."[6]

He asserts that the state further assured him of transactional immunity by electing to proceed with an internal investigation and not following the procedures for investigations of criminal matters contained in article 9.4 of the agreement.[7]

---

[6] The "Disciplinary Warning—Criminal Conduct" form contained similar warnings, but defendant only argues that the collective bargaining agreement promised him transactional immunity.

[7] Article 9.4 of the collective bargaining agreement provides that, in criminal investigations,

The state argues that language of the collective bargaining agreement does not promise defendant transactional immunity. It concedes that OSP may have violated either the internal investigation or the criminal investigation provisions of the collective bargaining agreement by ordering defendant to respond during the internal investigation. But, it asserts that articles 11 and 12 provide the exclusive remedies for violations of the agreement and that neither provision promises transactional immunity.[8] Finally, the state argues that, if OSP made a promise of immunity, "at most, it told [defendant] he would receive use immunity."

We agree with the state. Nothing in the language of the collective bargaining agreement describing employees' rights in the disciplinary process or investigation procedures followed under it promised defendant transactional immunity.[9] The collective bargaining agreement only protects an

---

"the following procedures shall be followed prior to the commencement of the interview: (1) The investigator shall notify the employee of the criminal nature of the investigation; (2) The investigator shall notify the employee that a refusal to answer questions asked by the investigator will not be a basis for disciplinary action against the employee. The employee has the right not to participate in the interview, and the right to terminate the interview, without resulting discipline."

[8] Article 11 describes discipline and discharge procedures, including pre-discharge notice requirements, remedies for an unjustly disciplined employee, appeals and time requirements.

[9] Article 12 of the collective bargaining agreement defines a grievance as "a dispute regarding the meaning, interpretation or application of this Agreement" and provides five steps for settling a grievance. Step 5 describes how to submit a grievance to an arbitrator and states that "[t]he arbitrator's decision shall be binding on the parties." That provision is authorized by ORS 243.706, which provides:

"(1) A public employer may enter into a written agreement with the exclusive representative of an appropriate bargaining unit setting forth a grievance procedure culminating in binding arbitration.

"(2) In addition to subsection (1) of this section, a public employer may enter into a written agreement with the exclusive representative of its employees providing that a labor dispute over conditions and terms of a contract may be resolved through binding arbitration."

The record does not indicate any attempt by the parties to determine, through the steps described in article 12, whether the language or procedures of the collective bargaining agreement promise defendant transactional immunity. However, neither party contends that, in the context of this criminal case, we lack authority to determine, in the first instance, the meaning, interpretation and application of the relevant sections of the collective bargaining agreement. *But see AFSCME v. Lane*

employee from certain uses of his or her statements. There is no mention of immunity from prosecution. Indeed, the words "subsequent criminal proceeding" alert an employee to the possibility of a criminal prosecution following an internal investigation. The criminal investigation procedures require OSP to give an employee notice of a criminal investigation and afford the employee a right to refuse to respond or to terminate the interview without incurring disciplinary action. There is no express or implied promise of transactional immunity in those procedures.

The state concedes that it violated defendant's right against self-incrimination. Consequently, defendant can seek only the usual remedy against unconstitutionally compelled testimony, the suppression of his statements and evidence derived from them. *State v. Graf, supra,* 114 Or App at 282.

Reversed and remanded.

---

*County Commissioners,* 45 Or App 161, 607 P2d 1212, *on recon* 46 Or App 645, 612 P2d 759, *rev den* 290 Or 249 (1980).