Argued and submitted December 6, 2001, at Riverdale High School, Lake Oswego; resubmitted en banc August 7, affirmed October 30, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# TAMERA LOUISE MEREDITH,
*Appellant.*

## 98CR212OFE; A106960

56 P3d 943

Rebecca Duncan, Deputy Public Defender, argued the cause for appellant. With her on the brief was David Groom, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler and Brewer, Judges.*

EDMONDS, J.

Kistler, J., dissenting.

_____
Schuman, J., not participating.

**EDMONDS, J.**

Defendant appeals from convictions for two counts of first-degree arson. ORS 164.325. On appeal, she argues that the trial court erred in denying her motion to suppress evidence obtained after a radio transmitter was attached to her employer's truck. We affirm.

Defendant was employed as a fire prevention technician by the United States Forest Service (USFS). Her duties required her to travel in her employer's vehicle in the Tiller District of the Umpqua National Forest. In August 1998, the USFS district ranger in charge of the Tiller District authorized USFS law enforcement agents to attach an electronic transmitter to the undercarriage of a USFS pickup truck that defendant customarily used during her work shift. The following day, USFS law enforcement agents monitored the location of the vehicle within the Tiller District from an airplane through the transmissions from the transmitter as defendant traveled. The signals indicated when the pickup was moving and when it was stopped. By monitoring the strength or weakness of the signal, agents were able to pinpoint the truck's location and keep it in sight, except when forest cover obscured their view.

At one point, defendant radioed to the ranger station that she was returning to headquarters. Then, as the agents monitored her vehicle, they saw the pickup stop and back up a road. The pickup went onto a logging spur and into a grassy open area. The agents observed defendant get out of the truck and squat down for about 20 seconds, "do something" with her hands, get back into the pickup, and drive away from the area. One of the agents immediately saw a flash of orange at the exact spot where defendant had been, and within seconds, he saw smoke rising from the spot and a widening dark patch on the ground.

At a pretrial hearing, defendant sought to exclude all evidence obtained from the agent's observations. Specifically, she contended that the use of the radio transmitter to locate the USFS pickup constituted an invasion of a protected privacy interest under Article I, section 9, of the Oregon Constitution.[1] The trial court reasoned that the government's

---

[1] Article I, section 9, of the Oregon Constitution provides, in part:

action constituted a search, but held that the search was reasonable because it was conducted with the consent of defendant's employer, the owner of the truck. Defendant appeals, arguing that the use of the radio transmitter constituted a search, that the search was warrantless and not justified by an exception to the warrant requirement, and that, despite USFS consent to the agent's monitoring of the location of the truck, the transmitter invaded defendant's privacy interest because it provided "continuous information about the vehicle's location and its movements when it was in defendant's possession." We disagree with defendant's arguments and conclude that no search occurred. In arriving at our conclusion, we follow the methodology prescribed by the Oregon Supreme Court, and we limit our holding to the specific facts of this case.

■ Under Article I, section 9, a "search" occurs when the government invades "the privacy to which one has a right." *State v. Campbell*, 306 Or 157, 164, 759 P2d 1040 (1988) (emphasis omitted). Privacy interests generally

"[a]re not self-announcing and, with a few possible exceptions, can be recognized only by their association with a private *place*, *i.e.*, by the fact that an object is kept or conduct occurs in a place that legitimately can be deemed private. *See, e.g.,* [*State v.*] *Dixson/Digby*, [307 Or 195, 211-12, 766 P2d 1015 (1988)] (defendant had protectable privacy interest in activity on undeveloped privately owned land only to the extent that he manifested an intent to exclude others by erecting fences or 'no trespassing' signs). Ultimately, then, the privacy interests that are protected by Article I, section 9, commonly are circumscribed by the space in which they exist and, more particularly, by the barriers to public entry (physical and sensory) that define the private space."

*State v. Smith*, 327 Or 366, 372-73, 963 P2d 642 (1998) (emphasis in original; footnote omitted).

Defendant and the dissent rely on the holding in *Campbell* in support of the position that, *ipso facto*, the monitoring of radio transmissions from a tracking device

---

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

Defendant does not make any argument under the federal constitution.

installed on a vehicle invades the operator's privacy interests. In *Campbell*, the police suspected that the defendant was a perpetrator of residential burglaries occurring in a rural area. After trying to follow the defendant with other means of surveillance, they attached a transmitter to his vehicle while the defendant was meeting with his probation officer. After six days of monitoring his vehicle, the batteries in the transmitter grew weak, and the officers instructed his probation officer to schedule another meeting with the defendant so that they could replace the transmitter's batteries. Thereafter, the police monitored his movements in two counties by using an airplane with a device that received transmissions from the transmitter. On the seventh day of monitoring the defendant's location, the police observed the defendant enter a house that was not his own and come out of it with personal belongings that he placed in his car. *See State v. Campbell*, 87 Or App at 415, 417-18, 742 P2d 683 (1987).

The trial court in *Campbell* suppressed the evidence obtained by the use of the radio transmitter. On appeal, both this court and the Supreme Court affirmed. In its opinion, the Supreme Court defined the issue as "whether police use of a radio transmitter to locate a *private* automobile to which the transmitter has been surreptitiously attached is a 'search' or 'seizure' under Article I, section 9, of the Oregon Constitution." 306 Or at 159 (emphasis added). It observed,

"[A] privacy interest, as that phrase is used in this court's Article I, section 9, opinions is an interest in freedom from particular forms of scrutiny. The interest is not one of freedom from any scrutiny in general, because, if that were the case, any form of scrutiny would infringe a privacy interest and thereby be considered a search."

306 Or at 170.

As the court later held in *State v. Ainsworth*, 310 Or 613, 616, 801 P2d 749 (1990), not all forms of scrutiny constitute searches; the threshold inquiry of whether a search occurs is "whether the police conduct at issue is sufficiently intrusive to be classified as a search." The facts of this case do not readily fall into the definition of a significant intrusion

into a specific privacy interest. One kind of identifiable privacy interest is in one's property, or in physical objects such as houses or automobiles. Here, unlike in *Campbell*, there was no physical invasion or trespass of defendant's property interests.[2] The radio transmitter was not attached to defendant's own vehicle, but to her employer's vehicle, with the employer's consent. In the absence of a physical trespass to a protected property interest, we must look elsewhere to identify what privacy interests of defendant, if any, were invaded by the conduct of the USFS and its agents.

■ A significant intrusion into an identifiable privacy interest under Article I, section 9, can also occur when there is a *sensory* invasion of private space, even though there is no physical invasion or trespass. For instance, in *Smith*, the police used a dog to detect the presence of a particular odor in the air outside a clearly defined private space. The court compared the facts in that case to cases where the police used high-powered telescopes, parabolic sound gathering devices, and infrared cameras to gather information from the interior of, or around, an enclosed space or as molecules emanate from that space. As to those techniques, the court observed,

> "[A]lthough such devices can operate from an external and public place, their use is invasive nevertheless, because they provide information *from* an enclosed space about the enclosure's contents that a police officer, standing at a lawful vantage point, cannot detect with ordinary human powers of perception. That is, they constructively move the observing police *into* the private space."

*Smith*, 327 Or at 374 (emphasis in original).

The court reasoned that, by contrast, the molecules in the air detected by the dog constituted an ambient substance in the public airspace, as distinguished from the detection of information from the interior of a private space. It therefore concluded that no unreasonable search had occurred within the meaning of Article I, section 9. The court's reasoning followed *State v. Lewis*, 296 Or 57, 672 P2d

---

[2] As the court said in *Smith*, the conduct of attaching the tracking device to the defendant's privately owned car in *Campbell* constituted "a clear form of invasion, a trespass[.]" *Smith*, 327 Or at 373 n 5 (emphasis omitted).

708 (1983), where the court held that no invasion of any private interest occurred when the police used a telescopic lens to photograph the defendant through the living room window of his residence, merely amplifying the view that would have been visible from the public sidewalk. Similarly, in *State v. Wacker*, 317 Or 419, 856 P2d 1029 (1993), the court held that the use of a starlight scope to observe the defendant's activities in a car in the parking lot of a tavern, where patrons of the tavern were regularly passing within a few feet, was not a search. The use of the light-enhancing device merely aided the police in seeing activities that otherwise could have been seen with the naked eye by a bystander. In each of those cases, the character of the scrutiny by the government was held not to be sufficiently intrusive so as to constitute a "search." As the court said in *Dixson/Digby*, 307 Or at 208, "the touchstone of Article I, section 9 [is] the right to be free from *intrusive* forms of government scrutiny." (Emphasis added.)

Here, as in *Lewis* and in *Wacker*, there was no sensory invasion of any private space. The areas where defendant was observed included the campgrounds, logging areas, roads, and clearings of the Tiller District, on public land, within the Umpqua National Forest. The actions observed by the authorities from the air included defendant getting out of her employer's pickup in a "fairly large * * * grassy or open area," crouching down momentarily, getting back into the vehicle, and leaving that location. Any citizen standing in or near that location or flying overhead could have observed defendant's actions. As the court said in *Campbell*,

"[T]he reason that the observations of a police officer who is standing in a public place infringe no privacy interest may be that there is no generally recognized freedom from such scrutiny by private individuals. Such observations by the police would thus not significantly reduce the freedom from scrutiny available to 'the people.' "

306 Or at 170.

It follows that if defendant is to prevail on her motion to suppress in the absence of a physical or sensory intrusion into private space, she must identify some other kind of privacy interest upon which there was a significant intrusion.

Another kind of identifiable privacy interest that Oregon citizens generally enjoy under Article I, section 9, is freedom from pervasive government scrutiny of their *private* lives or personal activities. That was the kind of intrusion that occurred in *Campbell*, where the police monitored defendant's private comings and goings for a period of days through the use of a radio transmitter. The *Campbell* court explained,

> "Any device that enables the police quickly to locate a person or object anywhere within a 40-mile radius, *day or night, over a period of several days*, is a significant limitation on freedom from scrutiny, as the facts of this case demonstrate. * * * [I]f the state's position in this case is correct, no movement, no location * * * would in any measure be secure from the prying of the government. * * * That is nothing short of a staggering limitation upon personal freedom."

306 Or at 172 (emphasis added).

■    Whether government scrutiny of personal activities is unconstitutionally intrusive depends on the particular facts of each case. As the *Campbell* court said, "[i]n order to decide whether the government has searched, we must look to the nature of the act asserted to be a search." 306 Or at 170. Here, the issue is whether defendant's location in a USFS vehicle while she was *working* on public land carries with it a cognizable privacy interest under Article I, section 9. To the extent that a person exposes activities to public view while working, that person necessarily foregoes any privacy interests as to those activities; that is particularly true regarding the use of a public vehicle on public land. For instance, the police may follow a person visually without violating Article I, section 9, when the vehicle is operated on a public highway. *See, e.g., State v. Carter/Dawson*, 287 Or 479, 485, 600 P2d 873 (1979).

■    We conclude that defendant had no privacy interest in the location of her employer's vehicles while she was working on public land. Her employer was entitled to know where its vehicle was at all times during the work day. Defendant's supervisor, Sands, testified that "if [defendant] is called on the radio and asked for her location * * * she would be

required to give that location." Significantly, the surveillance through the radio transmitter in this case tracked only the location of the vehicle. Defendant admitted that "all of [her] activities that day * * * from the time [she] left Tiller Ranger District * * * were Forest Service activities," and that she was not engaged in any personal matters while on the job. While, in the abstract, an employee could engage in activities while on the job that are so personal in nature that the surveillance of those activities would violate Article I, section 9, the driving of the employer's vehicle on public land is not such an activity, nor is the act of getting out of the truck for a few seconds in a wide grassy clearing. The surveillance of defendant's vehicle from the air did not subject her private activities inside the vehicle to scrutiny. Moreover, her activities in the grassy open area outside the vehicle were not the kind of activities on public land that carry with them a right of privacy.

In sum, we are unable to identify any cognizable privacy interest held by defendant at the time that her vehicle was tracked by the USFS agents. In the absence of any evidence of a cognizable privacy interest or of a significant intrusion into defendant's interest in being free from government scrutiny, we conclude that the trial court did not err in denying defendant's motion to suppress.

Affirmed.

**KISTLER, J.,** dissenting.

The majority holds that no search occurred when defendant's employer used a radio transmitter to secretly monitor her movements during the work day. Unless government employees have no constitutionally protected right against electronic surveillance in the workplace, the form of surveillance that the government employed here cannot be distinguished from the form of surveillance that the court held unconstitutional in *State v. Campbell*, 306 Or 157, 759 P2d 1040 (1988). Because I would hold that government employees retain a right to privacy against this form of surveillance, I respectfully dissent.

Defendant worked for the United States Forest Service (USFS). The record does not disclose that the USFS had

any reason to suspect that defendant was either violating its workplace rules or engaging in criminal activity. USFS special agents, however, attached a radio transmitter to defendant's truck so that they could secretly monitor her movements during the work day. Using the transmitter, the federal agents tracked defendant's movements throughout the day and discovered evidence of arson. On appeal, defendant argues that attaching the transmitter to her work truck constituted a search for the purposes of Article I, section 9, of the Oregon Constitution. It follows, she reasons, that the evidence that the federal agents obtained cannot be used against her in a state criminal trial unless they either had a warrant or an exception to the warrant requirement applies.

If the federal government had prosecuted defendant in federal court, the evidence that the agents obtained as a result of the radio transmitter would have been admissible. The Fourth Amendment does not prohibit the government from attaching a radio transmitter to any person's car and tracking that person's movements on public roads. *See United States v. Knotts*, 460 US 276, 281, 103 S Ct 1081, 75 L Ed 2d 55 (1983). As the Court explained in *Knotts*, a radio transmitter merely permits police officers to discover what is open to public view. *Id.* at 281-83. Because a transmitter's use does not invade a person's privacy interests under the Fourth Amendment, using a transmitter to monitor a person's movements on public roads does not constitute a search for the purposes of the federal constitution. *Id.* at 285.

The state, however, chose to prosecute defendant in state court, and the Oregon Supreme Court has reached a different conclusion under Article I, section 9, of the Oregon Constitution. *See Campbell*, 306 Or at 172-73.[1] In *Campbell*, the court explained that using a hidden radio transmitter to monitor a person's movement on public roads is no different from using a hidden listening device to monitor that person's conversation. *Id.* at 172. Each is a search because it permits the government to surreptitiously monitor public actions

---

[1] Even though the federal agents obtained the evidence consistently with the federal constitution, the evidence is not admissible in a state criminal prosecution unless the evidence was also obtained consistently with the state constitution. *State Davis*, 313 Or 246, 254, 834 P2d 1008 (1992).

that a person reasonably understood were private. *Id.* The court reasoned in *Campbell*:

> "The problem presented by this case is essentially much like that presented in *Katz* [*v. United States*, 389 US 347, 353, 88 S Ct 507, 19 L Ed 2d 576 (1967)], which was whether using a hidden listening device placed in a public place could be considered a search. Conversations in public may be overheard, but it is relatively easy to avoid eavesdroppers by lowering the voice or moving away. Moreover, one can be reasonably sure of whether one will be overheard. But if the state's position in this case is correct, no movement, no location and no conversation in a 'public place' would in any measure be secure from the prying of the government. There would in addition be no ready means for individuals to ascertain when they were being scrutinized and when they were not. That is nothing short of a staggering limitation upon personal freedom. We could not be faithful to the principles underlying Article I, section 9, and conclude that such forms of surveillance were not searches."

*Id.* at 172. The court accordingly held that "the use of the radio transmitter to locate [the] defendant's automobile was a search under Article I, section 9, of the Oregon Constitution." *Id.*

The majority's holding in this case—that the use of a radio transmitter to surreptitiously monitor defendant's movements did not constitute a search—cannot be squared with the court's holding in *Campbell*, unless defendant's status as a government employee somehow changes the analysis. The majority identifies essentially two reasons why defendant's employment bears on that question. It notes initially that defendant's employer consented to attaching the transmitter to the government truck that defendant drove at work. It reasons that, "[u]nlike in *Campbell*, there was no physical invasion or trespass of defendant's property interests." 184 Or App at 528. Although the federal agents did not trespass on defendant's property interests, it does not follow that they did not invade her privacy interests.

If the absence of a trespass were dispositive, government employers could surreptitiously bug an employee's office phone, place a hidden microphone in an employee's

office, or secretly put a camera in the company bathroom. The fact that no trespass occurs because the employer owns the office phone or the building where the employee works does not divest an employee of any privacy interest in the workplace. Rather, as the majority implicitly acknowledges and as the courts have uniformly recognized since *Katz*, a person does not lack a constitutionally protected privacy interest merely because the government's efforts to discover what a person says or does do not constitute a trespass. *Katz*, 389 US at 351-52; *Campbell*, 306 Or at 168-69. Were the rule otherwise, *Katz* would have been decided differently.

The majority advances an alternative rationale. It reasons that defendant's "employer was entitled to know where its vehicle was at all times during the work day." 184 Or App at 530. The majority's reasoning proves too much. An employer is surely entitled to know what its employees do during the work day. For example, an employer is entitled to know whether its employees are using the office phones and computer equipment for work-related or personal reasons. But it does not follow that government employers may place a hidden bug in the office phones or surreptitiously monitor an employee's use of e-mail. Government employees do not give up their constitutional rights when they accept public employment. Rather, as the Oregon Supreme Court has recognized, government employees retain their right to be free from unreasonable searches and seizures in the workplace. *See AFSCME Local 2623 v. Dept. of Corrections*, 315 Or 74, 843 P2d 409 (1992) (Article I, section 9); *cf. State v. Beugli*, 126 Or App 290, 297, 868 P2d 766, *rev den*, 320 Or 131 (1994) (Article I, section 12).

To be sure, the operational realities of the workplace may limit the scope of an employee's privacy rights. *See O'Connor v. Ortega*, 480 US 709, 717-18, 107 S Ct 1492, 94 L Ed 2d 714 (1987) (plurality opinion). And the fact that a government employer tells its employees in advance that it will be monitoring their use of the office computers or phones can be an important factor in the analysis. *See* Wayne R. LaFave, 4 *Search and Seizure: A Treatise on the Fourth Amendment* § 10.3(d), 486 (3d ed 1996). But there was no advance notice

here,[2] and the operational realities of the workplace do not permit government employers to surreptitiously bug their employees' office phones or install hidden cameras in their offices to observe their activities during the day. Requiring citizens to go through the day wondering whether their conversations and actions are subject to electronic surveillance is inconsistent with the principles that underlie Article I, section 9. *Campbell*, 306 Or at 172-73. That is so whether they are government employees or not.

Neither reason the majority advances for distinguishing *Campbell* suffices. Indeed, even the majority does not suggest that Article I, section 9, permits government employers to engage in *every* form of surreptitious monitoring. Its holding appears to rest ultimately on the proposition that using a radio transmitter to track defendant's movements during the day did not invade any privacy interest that she had because her location on a public highway or public lands was not truly private. 184 Or App at 530-31. In effect, the majority embraces the United States Supreme Court's reasoning in *Knotts*. Whatever the merit of that reasoning, the Oregon Supreme Court expressly rejected it in *Campbell*. 306 Or at 166-67. We are not free to revive it. Beyond that, in *Campbell*, the court specifically equated using a radio transmitter to monitor a person's movements with using a hidden microphone to listen to a person's conversation. *Id.* at 172. In light of that equation, we cannot hold that government employers are free to surreptitiously attach radio transmitters to their employees' work vehicles unless we are also willing to say that they may secretly bug their office phones. Following *Campbell*, I would hold that the USFS's actions constituted a search.

Because the government's actions constituted a search for the purposes of Article I, section 9, the remaining question is whether the search was justified. The USFS did not obtain a warrant before attaching the radio transmitter

---

[2] This case accordingly does not require us to decide whether Article I, section 9, would prevent a government employer from monitoring its employees' movements or communications if it gave them advance notice of its actions. *See* Wayne R. LaFave, 4 *Search and Seizure: A Treatise on the Fourth Amendment* § 10.3(d), 486 (3d ed 1996); *United States v. Simons*, 206 F3d 392 (4th Cir 2000). Rather, this case involves only surreptitious monitoring.

to defendant's work truck, but the state argues that its actions fell within one of the exceptions to the warrant requirement. It argues that the USFS's consent was sufficient to justify its actions.[3] If, however, defendant has a right of privacy against USFS's placing a monitoring device on her work truck, allowing the USFS to consent to that act would vitiate that privacy right. *See United States v. Taketa*, 923 F2d 665, 673 (9th Cir 1991).[4] Because the USFS's actions constituted a search for which there is no justification, I respectfully dissent.

Judges Armstrong, Wollheim, and Brewer join in this dissent.

---

[3] Analytically, the USFS's consent is relevant in two related but separate respects. First, because the USFS consented to attaching the transmitter to its truck, there was no trespass. The majority reasons that the absence of a trespass bears on the question whether the agents violated defendant's privacy interests and thus engaged in a search. As explained above, the fact that the government did not interfere with defendant's property interests does not mean that its action did not invade her privacy interests. Second, consent is also an exception to the warrant requirement. The state argues that, even if there was a search, the USFS's consent is sufficient to justify the invasion of defendant's privacy interests. Because I would hold that attaching the radio transmitter was a search, it is necessary to reach the state's argument.

[4] In *Taketa*, one of the defendants was an officer of the local bureau of investigations who was working with the Drug Enforcement Agency (DEA). The DEA eventually began investigating him and another DEA agent for suspicion of illegal wiretapping. Part of their investigation involved the DEA's searching the defendant's office. The defendant was convicted and, on appeal, argued that the search of his office violated the Fourth Amendment. The government attempted to justify its actions by arguing that the head of the DEA could consent to the search on behalf of the defendant. The Ninth Circuit held t⁾ ₁t "allowing such employer 'consent' would destroy the expectations of privacy ir the workplace we have recognized as valid." 923 F2d at 673.