Argued and submitted April 15, decision of the Court of Appeals and judgment of the circuit court affirmed August 26, 2004

STATE OF OREGON,
*Respondent on Review,*

*v.*

TAMERA LOUISE MEREDITH,
*Petitioner on Review.*

(8CR212OFE; CA A106960; SC S50173)

96 P3d 342

Rebecca Duncan, Deputy Public Defender, Salem, argued the cause and filed the briefs for petitioner on review. With her on the briefs was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

Douglas Zier, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With

him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Julia E. Markley, Perkins Coie, Portland, argued the cause and filed the brief for *amicus curiae* ACLU Foundation of Oregon, Inc. With her on the brief were Michael S. Simon and Chin See Ming, Portland.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

RIGGS, J.

---

** Kistler, J., did not participate in the consideration or decision of this case.

**RIGGS, J.**

In this criminal case, we must decide whether, under the circumstances here, the attachment and monitoring of an electronic tracking device ("transmitter") to a truck that defendant's government employer owned constituted a "search" under Article I, section 9, of the Oregon Constitution.[1] In affirming the trial court's denial of defendant's motion to suppress the evidence derived from the use of the transmitter, the Court of Appeals held that neither the attachment nor the subsequent monitoring of the transmitter had amounted to a search under Article I, section 9. *State v. Meredith*, 184 Or App 523, 56 P3d 943 (2002). We agree and therefore affirm the decision of the Court of Appeals and the judgment of the trial court.

The facts relevant to our decision are few, and we state them briefly. The United States Forest Service (USFS) employed defendant as a fire prevention technician in the Tiller District of the Umpqua National Forest. The USFS provided trucks for its personnel, including defendant, to use in the performance of their work duties. The USFS owned the trucks, which remained at the job site, and employees picked up and dropped off the keys to the trucks at the beginning and end of the work day. Defendant customarily used the same truck, although she did not have exclusive use of that truck and used a different vehicle when that truck was not available.

In August 1998, the USFS district ranger in charge of the Tiller District authorized USFS law enforcement agents to attach a transmitter to the undercarriage of the USFS truck that defendant customarily used during her work shift. The transmitter emits a signal on a certain frequency that changes in speed depending on whether the

---

[1] Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

Defendant did not argue to the trial court or this court, and we do not consider, whether the government conduct here was a search under the Fourth Amendment to the United States Constitution. *See* US Const, Amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *.").

vehicle is stationary or moving. By using a separate receiver, a person can determine the transmitter's location.

The USFS agents attached the transmitter to the truck in the evening while the truck was parked in the USFS parking lot. The next day, the agents monitored the transmitter from an airplane. After determining the truck's location, the agents were able to track the truck visually, except when forest cover obscured their view.

After monitoring the truck for approximately an hour and a half, the agents saw the truck stop, reverse up a road, and come to a stop in an open area near a logging spur. The agents observed defendant leave the truck and squat down for about 20 seconds, stand up rapidly, get back into the truck, and drive away from the area. One of the agents immediately saw a flash of orange at the location where defendant had been, and, within seconds, he saw a widening dark patch on the ground and smoke rising from the area.

The state charged defendant with 35 counts of first-degree arson, ORS 164.325, involving the incident at issue here and other fires of suspicious origin. Defendant filed a pretrial motion to suppress all evidence derived from the agents' observations, arguing that the use of the transmitter to locate and track the movements of her employer's truck had constituted a warrantless and unlawful search under Article I, section 9. After hearing testimony and argument at a pretrial hearing, the trial court concluded that the USFS action had amounted to a search under this court's decision in *State v. Campbell*, 306 Or 157, 759 P2d 1040 (1988) (holding that warrantless attachment of similar transmitter to private vehicle and monitoring of transmitter had been unreasonable search under Article I, section 9). The trial court further held, however, that the search had been reasonable because defendant's employer had consented to the installation and operation of the transmitter. A jury ultimately convicted defendant of two counts of first-degree arson.

On defendant's subsequent appeal, a divided, en banc Court of Appeals affirmed, but on different grounds. *Meredith*, 184 Or App at 525-26. The majority recognized that *Campbell* had involved the same technology and the

same type of monitoring by a government agent that had occurred in the present case. The majority stressed, however, that *Campbell* had involved the attachment of a transmitter to a private vehicle and that the monitoring of that vehicle involved government scrutiny of private and personal activities. The majority contrasted that type of intrusion with the use of the transmitter in this case, which involved disclosure of the location of defendant's employer's truck while on public land and during defendant's working hours. The majority concluded that "defendant had no privacy interest in the location of her employer's vehicles while she was working on public land" and, therefore, that no search had occurred under Article I, section 9. *Meredith*, 184 Or App at 530.

Four judges dissented, arguing that the secret use of a transmitter to monitor defendant's movements during the work day had invaded defendant's protected privacy interest against electronic surveillance in the workplace. *Id.* at 531 (Kistler, J., dissenting). The dissent asserted that the majority's holding was inconsistent with *Campbell* and rejected the view that defendant's status as a government employee, or any right of the USFS to know the location of its truck during the day, altered the relevant analysis. *Meredith*, 184 Or App at 533-35 (Kistler, J., dissenting). The dissent also contended that the majority's analysis threatened to authorize the use of more intrusive surveillance technology in the workplace. *Id.* (Kistler, J., dissenting).

■ In deciding whether the government conduct here violated Article I, section 9, the threshold question is whether the conduct at issue constituted a "search." *See State v. Juarez-Godinez*, 326 Or 1, 5-6, 942 P2d 772 (1997) (outlining methodology for addressing Article I, section 9, questions). If the government conduct did not amount to a "search" within the meaning of Article I, section 9, then the protections of that constitutional provision do not apply, and our inquiry ends. *See State v. Smith*, 327 Or 366, 374, 963 P2d 642 (1998) (stating that, because dog sniff conducted in public place was not search, protections of Article I, section 9, did not apply).

■ Under Article I, section 9, a search occurs when the government invades a protected privacy interest. *E.g.,*

*Smith*, 327 Or at 372 (describing pivotal question for purposes of defining Article I, section 9, search as "whether the police invaded a protected privacy interest"); *State v. Nagel*, 320 Or 24, 29, 880 P2d 451 (1994) ("Under Article I, section 9, a search is 'an intrusion by a governmental officer, agent, or employee into the protected privacy interest of an individual.'" (quoting *State v. Rhodes*, 315 Or 191, 196, 843 P2d 927 (1992)). Here, defendant does not argue, nor could she argue successfully, that the attachment or the monitoring of the transmitter on her employer's truck was a physical or sensory invasion of her private space. *See Smith*, 327 Or at 373 ("[T]he privacy interests that are protected by Article I, section 9, commonly are circumscribed by the space in which they exist and, more particularly, by the barriers to public entry (physical and sensory) that define that private space."). As defendant correctly argues, however, the absence of a physical or sensory invasion of defendant's private space does not necessarily defeat her claim that the government conduct constituted a "search" for purposes of Article I, section 9. We therefore must consider the interest for which defendant asserts constitutional protection and determine whether that interest is "private" within the meaning of Article I, section 9.

To define her protected privacy interest in the present case, defendant relies on this court's decision in *Campbell*. In *Campbell*, the police, acting without a warrant, surreptitiously attached a radio transmitter to the underside of the defendant's vehicle while it was parked in a public parking lot. Using a small airplane, the police monitored the transmitter to determine the location of the defendant's vehicle, visually followed it, and observed the defendant burglarizing a residence. On review, this court concluded that the attachment and monitoring of the transmitter had amounted to a constitutionally significant "search" that had violated Article I, section 9. *Campbell*, 306 Or at 172.

Defendant interprets *Campbell* as establishing a right to be free from the government's surreptitious use of a transmitter to monitor a person's location and movements under *any* circumstances. Defendant bases that argument not simply on *Campbell*'s ultimate conclusion that the use of the transmitter had amounted to a search in that case. Rather, she relies on the court's definition of privacy in

*Campbell* as "an interest in freedom from particular forms of scrutiny," *id.* at 170, and its description of when the government's use of technological developments would trigger Article I, section 9, protection:

> "In deciding whether government practices that make use of th[o]se developments are searches, we must decide whether the practice, if engaged in wholly at the discretion of the government, will significantly impair 'the people's' freedom from scrutiny, for the protection of that freedom is the principle that underlies the prohibition on 'unreasonable searches' set forth in Article I, section 9."

*Id.* at 171.

The *Campbell* approach, defendant argues, means that this court looks to only the government conduct asserted to be a search and evaluates how that conduct, if engaged in wholly at the discretion of the government, would impact the general privacy interests of "the people." According to defendant, in *Campbell*, this court determined that the secret use of a transmitter was a government practice that, under any circumstance, significantly impaired the interest of "the people" to be free from scrutiny. If defendant is correct, then the factual differences between *Campbell* and this case are irrelevant, as she argues. The fact that the government used a transmitter in this case in the same manner that the government used a similar transmitter in *Campbell* would end the matter.

We, however, disagree with defendant's reading of *Campbell*, both on its own terms and in light of this court's case law. In *Campbell*, this court did not decide that the secret use of a transmitter, in any context, would intrude on privacy interests that Article I, section 9, protects. The court also did not use the terms "form of scrutiny" and "government practice" to refer solely to the government's use of a technological development. *See Campbell*, 306 Or at 170 (describing "unaided observations *from a public place*" as one "form of scrutiny" (emphasis added)); *id.* at 171 (citing "government practices that make use of these [technological] developments"). Further, defendant's approach to defining her protected privacy interest is contrary to the manner in which this court has addressed the Article I, section 9, "search"

inquiry both before and after *Campbell*. *See State v. Wacker*, 317 Or 419, 426-27, 856 P2d 1029 (1993) (use of video camera and starlight scope to observe activity within interior of vehicle was not search when vehicle was in public parking lot with console light on); *State v. Dixson/Digby*, 307 Or 195, 211-12, 766 P2d 1015 (1988) (holding that, to preserve Article I, section 9, privacy interest in unbounded and unimproved land, person must manifest intention to exclude public by erecting fences or "no trespassing" signs); *State v. Louis*, 296 Or 57, 60-61, 672 P2d 708 (1983) (use of telephoto lens to take photograph through living room window was not search when conduct was visible from public sidewalk and defendant invited public to observe conduct). In those cases, this court assessed whether the defendant had had a protected privacy interest in light of the particular context in which the government conduct occurred.

From that perspective, we understand the interest at issue here to boil down to defendant's claim to an interest in keeping her location and work-related activities free from this type of electronic surveillance by her employer while she used employer-owned property on work time. Defendant's claim to Article I, section 9, protection for that interest is distinguishable from the protected privacy interest that was at issue in *Campbell*.

In *Campbell*, police officers attached a transmitter to the defendant's private vehicle and committed a trespass in doing so. *See* 306 Or at 172 (noting difficulty of detecting transmitter hidden on one's possessions); *cf. Rhodes*, 315 Or at 196-97 (opening vehicle door to examine interior was search).[2] The officers then subjected the defendant and his vehicle to pervasive and constant examination of his movements and location throughout his daily life. In the same way that electronically eavesdropping on public conversations

---

[2] In the present case, the USFS agents attached the transmitter to the exterior of the truck, with the consent of the employer, while the truck was parked in the employer's parking lot. 337 Or at 301. There is no allegation that the truck itself was defendant's private possession, that the agents interfered with either defendant's private possessions, if any, that were in the truck at the time of the attachment, or that the transmitter enabled the agents to observe or overhear acts of defendant inside the cab of the truck. Each of those examples would raise issues not present in this case, and we express no opinion respecting them.

would enable the police to gain information that, although nominally public, was not normally available to a passerby, the police monitoring of the transmitter allowed the government to observe a range of conduct that normally would have been inaccessible to the general public or to government officials. *See Campbell*, 306 Or at 172 ("The problem presented by this case is essentially much like that presented in *Katz* [*v. United States*, 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967)], which was whether using a hidden listening device placed in a public place could be considered a search.").

Unlike the monitoring of the defendant as a member of the general public in *Campbell*, the monitoring of the transmitter at issue in this case occurred in a factually unique context and employment relationship. Unlike the defendant in *Campbell*, defendant here was using a truck that her employer had provided to perform her work duties. Defendant had no right to privacy with respect to that truck's location, and the transmitter never disclosed anything other than that location. Put differently, defendant did not have a protected privacy interest in keeping her location and work-related activities concealed from the type of observation by her employer that the transmitter revealed. Under the facts of this case, neither the attachment of the transmitter to the truck nor the subsequent monitoring of that transmitter's location invaded a privacy interest of defendant, and, it follows, no search implicating Article I, section 9, occurred.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.