Submitted January 22, affirmed October 8, 2014, petition for review denied February 19, 2015 (356 Or 767)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANGELIQUE JEANENE CARLE,
aka Angelique Jeanene Dunlap,
*Defendant-Appellant.*

Marion County Circuit Court
10C46482; A150975

337 P3d 904

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jake J. Hogue, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Defendant appeals a judgment of conviction for conspiracy to commit delivery of methamphetamine, assigning error to the trial court's denial of her motion to suppress evidence. While police were searching a car that had been reported stolen, they found a cell phone in the car that, according to a man whom police found sleeping in the car, belonged to "Duane." That phone received a text message, the police flipped open the phone, and they saw a message from defendant asking if the recipient knew anyone who wanted to buy methamphetamine. Defendant later exchanged text messages with one of the officers, agreed to sell him methamphetamine, and, after being confronted by the officer, admitted that she had intended to sell methamphetamine to the person she was texting. Defendant moved to suppress evidence of the text message found on Duane's phone and the other evidence of defendant's interactions with police, arguing that the police, in viewing the text message on the phone, had conducted an unlawful search under Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution. The trial court disagreed and denied that motion.

On appeal, defendant asserts that she had a privacy interest in the content of her text message that police discovered on Duane's phone, and the police violated that interest—*i.e.*, they conducted a "search"—when they viewed the message that was delivered to that phone. The state counters that a sender of a text message does not retain a privacy interest in the digital copy of the text message found on the recipient's phone. For the reasons that follow, we agree with the state, and, accordingly, affirm.

We review the trial court's denial of defendant's motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In doing so, we are bound by the trial court's express and implicit factual findings if there is constitutionally sufficient evidence in the record to support them. *Id.* We state the facts in accordance with that standard.

Two Salem police officers found a man sleeping in the driver's seat of a stolen truck. One of those officers,

Welsh, placed the man, Ross, in the back of his patrol car on suspicion of unauthorized use of a motor vehicle and identity theft. As the police searched Ross and the truck, they found two cell phones—one on Ross's person and the other clipped to a visor in the truck. Ross told the police that the phone on the visor was not his and that it belonged to "Duane."

While the officers continued to search the vehicle, that phone received a text message. Welsh flipped open the phone and saw a message from "Angel" that "said something to the effect of, do you know anybody that wants a 30." He used the phone to text back "maybe" and then turned the phone over to Bennett, a narcotics detective.

Bennett, who understood the text message to refer to $30 worth of methamphetamine, texted back and forth with Angel over the next few hours. Angel agreed to meet the detective and sell him drugs at a specific spot, and she texted when she was about to arrive. When police saw defendant arrive at the spot of the arranged drug sale, they detained her and read her *Miranda* warnings and a consent-to-search card. Defendant consented to a search of her phone, and police found the text messages Bennett had sent to her phone. Defendant then told police that she had planned to take the $30 and retrieve drugs from a nearby apartment.

After being charged with conspiracy to commit delivery of methamphetamine,[1] defendant moved to suppress evidence of the initial text found on Duane's phone and the evidence found during the subsequent police investigation, arguing that the police had conducted an unreasonable search of her "intercepted communications" under Article I, section 9, and the Fourth Amendment. The state responded that "a person who owns a cellular phone has an expectation of privacy within that phone, but a third party sending text messages to that phone cannot have a privacy interest or an expectation of privacy, and rather assumes the risk of who may be on the receiving end of the messages

---

[1] "A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony * * * be performed, the person agrees with one or more persons to engage in or cause the performance of such conduct." ORS 161.450(1). ORS 475.890 makes unlawful delivery of methamphetamine a felony.

that they send." The state also argued that, assuming that police had conducted an unlawful search, suppression was not warranted because the *Miranda* warnings and consent to search "obviate[d] any exploitation" of that illegality.

The court denied defendant's motion, concluding, primarily, that

"defendant does not have a constitutionally protected privacy interest in the cell phone seized from the stolen truck * * * and does not have a constitutionally protected privacy interest in the text messages she sent to that phone and multiple other people[.]"

The court further concluded that, even if there was an illegal search, "[t]he *Miranda* warnings and consent to search card warnings attenuated any alleged police misconduct so that the resulting consent to search defendant's phone was independently obtained, and not the result of exploiting any unlawful police conduct."

Following the denial of her motion, defendant waived her right to a jury trial and proceeded to trial on stipulated facts. The trial court convicted defendant of the charged crime, sentenced her to 36 months' probation, and ordered her to pay a money award. Defendant appeals, again raising arguments under both the state and federal constitutions.

Our discussion necessarily begins with defendant's claim under the Oregon Constitution. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (court disposes of state constitutional claims before addressing federal constitutional claims). Article I, section 9, provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" A "search," under that provision, occurs when a government agent intrudes into an individual's protected privacy interest. *State v. Meredith*, 337 Or 299, 303-04, 96 P3d 342 (2004). A protected privacy interest "is not the privacy that one reasonably *expects* but the privacy to which one has a *right*." *State v. Campbell*, 306 Or 157, 164, 759 P2d 1040 (1988) (citation omitted; emphasis in original).

We determine whether the government invaded a person's protected privacy interest "by an objective test of whether the government's conduct 'would significantly impair an individual's interest in freedom from scrutiny, *i.e.*, his privacy.'" *State v. Wacker*, 317 Or 419, 425, 856 P2d 1029 (1993) (quoting *State v. Dixson/Digby*, 307 Or 195, 211, 766 P2d 1015 (1988)).

On appeal, defendant again contends that she has a privacy interest in "the contents of the text messages that she had sent to 'Duane.'" She asserts that text messages "by their nature connote a privacy interest," reasoning that those messages are "intended for a specific recipient, implicitly entrusted to that person and that person only." Comparing text messages to telephone conversations and letters, defendant maintains that "[c]ourts have held that, under both the state and federal constitutions, the contents of letters and phone conversations carry a constitutionally protected privacy interest, such that a defendant can suppress evidence that derives from an unlawful search of either the letter or phone conversation." The analysis does not change, defendant argues, "merely because the text messages were [found] on someone else's phone."

In response, the state argues that the fact that police found defendant's text message on someone else's phone makes all the difference. The state acknowledges that Duane, as the purported owner of the searched phone and the recipient of the text, "might have been entitled to suppression of the text from defendant by virtue of his possessory interest in his phone." But, in the state's view, a sender of a text like defendant "has no cognizable privacy interest in a text that she voluntarily sent to, and which was then received by, a phone in which the sender has no possessory interest." The state reasons that, once defendant sent that message, she made it "readily available to whoever [could] or [did] access the phone that receive[d] the text."[2]

---

[2] The state also argues that, even if the police conducted an unlawful search of Duane's phone, evidence that police later found on *defendant's* phone, pursuant to her consent to search, should not be suppressed because the discovery of that evidence was attenuated from the illegal search of Duane's phone. The state further contends that the evidence found on defendant's phone, by itself, established that defendant conspired to commit delivery of methamphetamine. Given our

Defendant's argument is anchored in the Supreme Court's observation that a person "clearly [has] a cognizable privacy interest in the *content* of his telephone calls." *State v. Johnson*, 340 Or 319, 336, 131 P3d 173 (2006) (emphasis in original). In *Johnson*, the court concluded that the defendant did not have a privacy interest in records of his cell phone "usage" kept by his provider "for the provider's own, separate, and legitimate business purposes (such as billing)," but remarked that the defendant "clearly" had a privacy interest in the content of calls made on a cell phone. Drawing from that reasoning, defendant argues that it makes no difference that the cell phone communication was written down; she advances the broad proposition that a person has a privacy interest in the content of written correspondence sent via a cell phone.

That general assertion, however, does little to answer the specific question posed in this case. We must assess whether a defendant has "a protected privacy interest in light of the particular context in which the government conduct occurred." *Meredith*, 337 Or at 306; *see also State v. Brown*, 348 Or 293, 298, 232 P3d 962 (2010) ("[I]t is not enough that police may have violated Article I, section 9, in some abstract sense."). The police searched a phone that purportedly belonged to "Duane," not defendant. Accordingly, we are not concerned with any privacy interest that defendant had in any digital copies of the sent text messages on her own phone. Nor are we concerned with what privacy interests Duane had with respect to the text messages on his phone. That is because "evidence may be suppressed only if police invaded the personal rights of the person who seeks suppression; the violation of someone else's rights is not enough." *State v. Makuch/Riesterer*, 340 Or 658, 670, 136 P3d 35 (2006) (holding that the defendants had no privacy interests in their attorney's home, as they did not own it, rent it, or store possessions in it).

The narrow question here, then, is whether defendant *retained* any protected privacy interest in the text message that she sent to Duane, once it was delivered to his phone. Because neither we nor the Supreme Court has yet

conclusion that the police did not violate defendant's rights in searching Duane's phone, we do not address those arguments.

addressed that question with respect to electronic communications, the parties draw from cases addressing whether a person retains a privacy interest in personal property that she gives to another. In *State v. Tanner*, 304 Or 312, 323, 745 P2d 757 (1987), for instance, the court explained that "the *entrustment* of an effect to another is sufficient to establish a privacy interest that is violated when the effect is discovered through an unlawful search." (Emphasis added.) There, the defendant pledged stolen goods to a couple as collateral for a loan, and those goods were discovered when police illegally searched the couple's residence. The court agreed with the defendant that, under those circumstances, he retained a privacy interest in the goods. The court reasoned that "a person who pledges effects as collateral is in much the same position as one who entrusts effects to another for other purposes," and because "there remained a possibility that [the] defendant would reclaim the effects, the entrustment was sufficiently viable to demonstrate that the illegal search of the [couple's] residence violated his privacy interests under section 9." *Id.*

By contrast, "when a person gives up all rights to control the disposition of property, that person also gives up his or her privacy interest in the property in the same way that he or she would if the property had been abandoned." *State v. Howard/Dawson*, 342 Or 635, 643-44, 157 P3d 1189 (2007). In *Howard/Dawson*, the defendants argued that they retained a privacy interest in garbage that they turned over to a sanitation company without any restriction on its disposition. 342 Or at 642. The court disagreed, explaining that the defendants' privacy rights were controlled by "the legal relationship between [the] defendants and the sanitation company"; the court noted that the defendants had "not claimed that their contract with the sanitation company limited what the company could do with the garbage once the company took possession of it." *Id.* at 641-42. Under those circumstances, they "retained no more right to control the disposition of the garbage once they turned it over to the sanitation company than they would had they abandoned it." *Id.* at 641.

In defendant's view, this case is more like *Tanner* than *Howard/Dawson*. She contends that text messages are

"a form of correspondence, such as letters, that are *implicitly entrusted* to [a specific recipient] and that person only." (Emphasis added.) We disagree. To the extent that the court in *Tanner* recognized that the entrustment of property giving rise to a privacy interest could be implied from the circumstances, those circumstances are not present here. In *Tanner*, the privacy interest was the product of a particular relationship in which the defendant could expect that his property, held as collateral, would be kept safe and returned if he repaid the loan. Here, as the state observes, "nothing suggests that defendant possessed any ability to retrieve her text from Duane's phone or otherwise 'reclaim' it once it was received."

Rather, just as the defendants in *Howard/Dawson* had given up control of the property they gave to their sanitation company, defendant lost the ability to control the dissemination of the digital copy of the message stored on Duane's phone. The recipient could show that copy to anyone in his presence, or he could instantaneously forward it along to anyone with a cell phone. *See State v. Patino*, 93 A3d 40, 56 n 21 (RI 2014) ("We can think of no media more susceptible to sharing or dissemination than a digital message, such as a text message or email, which vests in the recipient a digital copy of the message that can be forwarded to or shared with others at the mere click of a button."). Moreover, defendant had no ability to control whether the recipient would safeguard his cell phone—a device that the recipient could take (and leave) anywhere—so that others could not see the messages displayed on it.[3]

At bottom, defendant's assertion that she "implicitly entrusted" Duane with her text message amounts to an argument that she did not expect anyone other than Duane to see the text message—or, at the least, she did not expect law enforcement to see the message. But a person's "subjective expectation of privacy does not necessarily determine whether a privacy interest has been violated." *Brown*, 348 Or at 298. In *State v. Delp*, 218 Or App 17, 24, 178 P3d 259, *rev den*, 345 Or 317 (2008), for example—where we

---

[3] The phone in this case had to be flipped open for someone to view the text, but, as the state notes, some phones automatically display a text message to anyone who can see the phone, without any affirmative conduct by the recipient.

considered whether the defendant had a privacy interest in subscriber information (*e.g.*, name, address, billing records) kept by his Internet service provider—we rejected the defendant's argument that "'[i]mplicit in the relationship between customer and [Internet service provider] is that the Internet service provider creates an alternate persona for the person, so that [the person] may travel the Internet in anonymity, not subjecting [the person's] real-life personal data to scrutiny.'" (Final two alterations added; remaining alterations in original.) We concluded that those "subjective intentions and expectations [did] not necessarily translate into a protected privacy interest under Article I, section 9." *Delp*, 218 Or App at 24. And in *Howard/Dawson*, the fact that the defendants "did not expect that the sanitation company would look through their garbage or permit someone else to do so" did not mean that they retained a protected privacy interest; instead, the court reasoned that, when a person gives up "any right to control [his property's] disposition," that person gives up "any protected privacy interest in it." 342 Or at 643.

So too here. When defendant sent a text message to Duane's phone, she may have expected that police would not see it. But once a copy of the text message arrived on Duane's phone, defendant lost all ability to control who saw that message. As a result, under Article I, section 9, defendant had no protected privacy interest in the digital copy of the message that police found on that phone.[4] Because no

---

[4] We acknowledge that Duane, apparently having left his phone in the vehicle, had not yet read the text message that defendant sent. But defendant does not argue—and we do not take the view—that her privacy rights should turn on whether the intended recipient has yet read the message. Where the question is whether *defendant* retained any rights in the content of the text message found *on Duane's phone*, we find it dispositive that, once the message reached that phone, defendant could not control what Duane or anyone else did with the message.

We note, further, that the police did not intercept the text message during the (presumably very short) time it took for it to arrive at the intended recipient's phone, and they did not gain access to a copy of that message held by either party's intermediary cell phone service provider. With respect to records held by cell phone or Internet service providers, we have concluded that a person does not have a privacy interest in those records with respect to certain noncontent information, such as a list of incoming and outgoing numbers or subscriber information, but we have not addressed what privacy rights a person holds in third-party records of the content of text messages or other electronic communications. In *State v. Magana*, 212 Or App 553, 566, 159 P3d 1163, *rev den*, 343 Or 363

search occurred for purposes of Article I, section 9, the trial court correctly denied defendant's motion to suppress under the state constitution.

We turn, then, to defendant's arguments under the federal constitution. For the purposes of the Fourth Amendment,[5] a "search" occurs when the police invade a defendant's "reasonable expectation of privacy." *Wacker*, 317 Or at 427 (internal quotation marks omitted). "That test involves two questions: first, whether the individual has shown that he or she seeks to preserve something as private; second, whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." *Id.* (internal quotation marks omitted). Defendant asserts that she "had a reasonable expectation of privacy in the contents of text messages that she sent to Duane," arguing that "[t]ext messages are similar to letters, which carry an expectation of privacy."

Defendant is correct—again, as a general matter— that a person has a reasonable expectation of privacy in the content of letters. *See, e.g., Ex parte Jackson*, 96 US 727, 733, 24 L Ed 877 (1878) ("Letters and sealed packages * * * in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles."); *United States v. Jacobsen*, 466 US 109, 114, 118-20, 104 S Ct 1652, 80 L Ed 2d 85 (1984) (explaining that "[l]etters and other sealed packages are in the general class

---

(2007), for example, we concluded that the defendant had no privacy interest in his cell phone provider's records, which contained "lists of the telephone numbers of incoming and outgoing calls on [the] defendant's cell phone, [but] not any communicative content of those calls." Similarly, in *Delp*, we concluded that the defendant did not have a privacy interest in subscriber information kept by his Internet service provider—*i.e.*, "the name, address, telephone number, subscriber number, local and long distance telephone billing records, length of service, and types of services utilized" for the defendant's account. 218 Or App at 20. In that case, we noted that the defendant did "not argue that [the service provider] provided [police with] any information regarding the *content* of his Internet communications in violation of Article I, section 9," and, accordingly, we did not address that issue. *Id.* at 27 n 8 (emphasis in original). In this case, we need not—and do not— express any opinion as to a person's privacy interest in service-provider records that contain the content of text messages or other electronic communications.

[5] The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

of effects in which the public at large has a legitimate expectation of privacy," but concluding that government agents' removal of plastic bags from a tube in the mail was not a search, where an employee of a private mail carrier had independently opened the package and discovered drugs earlier). There can be no doubt, moreover, that the Supreme Court has recognized that similar privacy concerns may be implicated when police access digital information, including text messages, stored on cell phones. *See Riley v. California,* ___ US ___, ___, 134 S Ct 2473, 2494-95, 189 L Ed 2d 430 (2014) (reasoning that, "[w]ith all they contain and all they may reveal, [modern cell phones] hold for many Americans the privacies of life" and holding that the police generally must obtain a warrant to search digital information on a cell phone seized from a defendant who has been arrested (internal quotation marks omitted));[6] *Ontario v. Quon,* 560 US 746, 760, 130 S Ct 2619, 177 L Ed 2d 216 (2010) (assuming without deciding that the respondent "had a reasonable expectation of privacy in the text messages sent on the pager provided to him by [his government employer]" and observing in *dicta* that "[c]ell phone and text message communications are so pervasive that some persons may consider them to be essential means or necessary instruments for self-expression, even self-identification" which "might strengthen the case for an expectation of privacy").

But, again, context is everything. And contrary to defendant's assertion, the general notion that a person has a reasonable expectation of privacy in letters or text messages does not compel the conclusion that she has a reasonable expectation of privacy in a copy of a sent text message that is found on the recipient's phone. With respect to letters or goods sent through the mail via the United States Postal Service or a common carrier, courts have held that a sender's reasonable expectation of privacy, "to the extent it is based solely upon the fact of his being the sender, terminates once delivery of the goods has been made." Wayne

---

[6] The Court in *Riley* noted that, "[b]ecause the United States and California agree that [the two consolidated cases before the Court] involve *searches* incident to arrest, these cases do not implicate the question whether the collection or inspection of aggregated digital information amounts to a search under other circumstances." *Riley,* ___ US at ___ n 1, 134 S Ct at 2489 n 1 (emphasis in original).

R. LaFave, 6 *Search and Seizure* § 11.3(f) (5th ed 2012) (collecting cases); *see, e.g., U.S. v. King*, 55 F3d 1193, 1196 (6th Cir 1995) ("[T]he sender's expectation of privacy ordinarily terminates upon delivery * * * even though the sender may have instructed the recipient to keep the letters private.").

Defendant does not address those decisions. Nor does she address decisions in which courts have similarly reasoned that a sender of an electronic communication does not have a reasonable expectation of privacy in the digital copy that has been delivered to the recipient's phone or computer.[7] In short, defendant has presented no reason why we should reach a different result under the Fourth Amendment than we have under Article I, section 9. To the contrary, we see no meaningful difference between the analysis that guides our conclusion in this case under Article I, section 9, and the proper analysis of this issue under the Fourth Amendment. We conclude, therefore, that defendant had no reasonable expectation of privacy in the digital copy of the text message that police found on Duane's phone.

In sum, because defendant had no privacy interest in the digital copy of the text message found on Duane's phone, police did not conduct a "search" under Article I, section 9, or the Fourth Amendment when they viewed that text message on Duane's phone. Accordingly, the trial court did not err in denying defendant's motion to suppress evidence

---

[7] *See, e.g., Patino*, 93 A3d at 56 (concluding, under the Fourth Amendment, that sender of text message "no longer enjoy[ed] a reasonable expectation of privacy in the digital copy of the message contained on the recipient's" cell phone because "a cell phone user retains control over what becomes of the content on his or her phone, but entirely loses control of the messages contained on the phone of another" once that message is delivered); *U.S. v. Lifshitz*, 369 F3d 173, 190 (2d Cir 2004) (reasoning that "[i]ndividuals generally possess a reasonable expectation of privacy in their home computers," but "they may not * * * enjoy such an expectation of privacy in * * * e-mail [messages] that have already arrived at the recipient"); *U.S. v. Heckenkamp*, 482 F3d 1142, 1146 (9th Cir), *cert den*, 552 US 1023 (2007) (concluding that the defendant had a reasonable expectation of privacy in his personal computer, but reasoning that "[a] person's reasonable expectation of privacy may be diminished in 'transmissions over the Internet or e-mail that have already arrived at the recipient'" (quoting *Lifshitz*, 369 F3d at 190)); *Guest v. Leis*, 255 F3d 325, 333 (6th Cir 2001) (reasoning that the sender of an e-mail lacks "a legitimate expectation of privacy in an e-mail that had already reached its recipient"); *U.S. v. Maxwell*, 45 MJ 406, 418 (CAAF 1996) (reasoning that, although a sender of an e-mail enjoys a reasonable expectation of privacy, "once the transmissions are received by another person, the transmitter no longer controls its destiny").

of that text and the resulting evidence of defendant's inter-
actions with police.

Affirmed.